```
1   Zachary Roberts, CA Bar No. 201739
    Corvus Law Group, LLC
2   1007 5th Avenue, Suite 904
    San Diego, CA 92101
3   Phone: (888) 315-4735
    Facsimile: (888) 316-0929
4
    Attorneys for Plaintiffs
5
```

FILED
10 OCT 19 AM 8: 56
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT M. WHITTLE, | CASE NO.: CV10 7811 VBF (SHx) |
| Plaintiffs, | |
| vs. | COMPLAINT FOR |
| ONEWEST BANK, FSB; MORTGAGE CAPITAL ASSOCIATES, INC.; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, | 1. DECLARATORY RELIEF;<br>2. QUIET TITLE;<br>3. ACCOUNTING;<br>4. REFUND FEES & COSTS. |
| DefendantS. | DEMAND FOR JURY TRIAL |

Plaintiff, Robert M. Whittle, by and through counsel, Zachary Roberts, complains of Defendants, and for cause of action alleges as follows:

### PARTIES, JURISDICTION, VENUE

1. Plaintiff Robert M. Whittle is a citizen of California, whose address is 25204 Via Azul, Laguna Niguel, California 92677.

2. Defendant, OneWest Bank, FSB (hereinafter "OneWest") is a federally chartered corporation, with its principal place of business in Pasadena, California and at all times relevant herein was doing business in the State of California.

3. Defendant, Mortgage Capital Associates Inc. (hereinafter "Mortgage Capital") is a California Corporation, with its principal place of business in West Los Angeles, California and at all times relevant herein was doing business in the State of California.

COMPLAINT

4. Defendant Mortgage Electronic Registration Systems hereafter "MERS" is a Delaware corporation with its principal place of business in Virginia and its corporate offices located at 1818 Library Street, Suite 300, Reston, Virginia 20190, and at all time relevant herein was doing business in the State of California. Defendant MERS purports to be the original first position beneficiary of the Trust Deed.

5. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 2201, California Code Civ. Proc. § 1060 et seq. (declaratory judgment) and California Code Civ. Proc. §760.020 (quiet title) and 28 U.S.C. § 1332(a). This Court also has, pursuant to 28 U.S.C. § 1367, supplemental jurisdiction over all other claims that are so related to claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

7. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). One or more parties to this action are national associations or institutions federally regulated under 12 U.S.C. §§ 2601 et seq.

8. Venue is proper in the United States Court for the Central District of California, pursuant to 28 U.S.C. § 1391(c).

## SECURITIZATION CASES

9. This is an action respecting a "securitized" loan - one in which the debt is pooled with similar debts and sold as "mortgage backed securities" ("MBS"). The debt is evidenced by a Note, and secured by a Trust Deed. The general process of securitization is described below.

10. Securitization reflects a process, not generally recorded or readily apparent, having a significantly different form and purpose from the traditional mortgage loan.

-2-

COMPLAINT

What begins as, and may give the appearance of, an ordinary mortgage loan, is, in fact, an investment scheme. Application of well-established principles of law to such a scheme fundamentally alters the rights of the parties in the subject realty. This results from the fact that persons asserting the status and rights of lenders actually make no loans, or loan only temporarily. They promptly transfer their rights to undisclosed persons, who participate with the intent of recovering from a collateral source when anticipated default occurs. Securitization schemes always involve providing investors rights to recoup profitably from a collateral source. The scheme is completed by rewarding the purported lenders with opportunity to foreclose debts they do not own, and retain the proceeds as fees for providing the investors opportunity to recoup profitably from a collateral source.

11. This action raises the issues whether, in the enforcement of established legal principles, purported lenders can obtain from such investors a right to collect debts owned by the investors, and whether such investors may retain an interest in the subject realty if they do not assert it, but choose instead recoupment from the collateral source.

12. The purpose of the action is to determine who is entitled to the subject realty. This does not determine validity of the debt.

13. In all securitization cases, there are three potential claimants to the subject realty:

    1. the borrower-purchaser of the realty;

    2. the purported lender (its successors and agents), who actually made no loan, and has sold its interest in the mortgage/trust deed;

    3. the investors in securities backed by the mortgage/trust deed, who actually funded any loan, and have any right to collect the debt.

14. Plaintiff here is the borrower/purchaser. Defendants are the purported lender, its

successors and assigns. The investors, whose identities have been withheld, may be named as John Does.

15. It can be determined preliminarily that the purported lender is not entitled to the realty. Commonly, it parted with no money, and is entitled to collect none. The loan was funded in almost all cases, by a warehouse lender, which received the funds from, or was reimbursed them by, investors in the MBS. When the lender transferred the loan to a securitization pool, it transferred, and lost any interest in the mortgage or trust deed.

16. Lacking such an interest, the lender cannot foreclose in its own right. Only the owners of the debt, the investors in MBS, may be able to do so. This is unaffected by the fact that the lender, under a Pooling and Securitization Agreement, may have possession of the Note as a "custodian" for the investors in MBS. Such possession is not the possession required to be a holder in due course authorized to enforce the Note.

17. The first stage of the present litigation is a declaratory judgment action to determine, and terminate, through a quiet title action, any claims of the purported lender to the realty. The position of the purported lender in these matters is essentially fraudulent. It is an attempt to obtain realty on which it has loaned nothing, in purported collection of a debt it is not owed. It is literally an attempt to obtain free realty.

18. The second stage of the litigation follows a declaratory judgment with a classic quiet title action to determine right to the realty as between the borrower/purchaser and the investors in MBS. Because of the jurisdictional difficulties in joining John Does in a federal diversity action, the second stage may need to be filed in State Court.

19. Absent a quiet title action, title to the realty may remain clouded and unmarketable indefinitely. A quiet title action requires the investors to come forward now, upon peril of losing any claim which may not have been previously discharged.

-4-

COMPLAINT

20. Absent a positive finding that the debt has been discharged, by, for example, default insurance in some form, a quiet title decree will not affect validity of the debt, only of the security.

**THE LENDER CANNOT BE A HOLDER IN DUE COURSE OF THE NOTE**

21. In the ordinary course of securitization, Notes evidencing the pooled debts are gathered and lodged in a repository, in the possession of a "custodian" who acts for the investors, and has no right or interest of his own. At the same time, the lender gives purchasers of MBS "certificates" certifying their ownership of the "loans" and their right to obtain the payments due under the Notes. Frequently, the "custodian" appointed by the securitizers is the original lender.

22. Since investors in MBS do not sign the Pooling and Servicing Agreement, under the typical Statute of Frauds such agreements do not bind the interest of the investors in the mortgage/trust deed. Further, the "custodian" appointed by the securitizers cannot be a "holder in due course" of the Notes. This means that the custodian has no authority to foreclose.

23. A Note is a negotiable instrument under the Commercial Code. The Code defines who is, or is not, a "holder" of a Note, and who is, or is not, entitled to enforce it.

24. California Commerical Code §3201, defines "negotiation" of an instrument as a "transfer of possession." §3203 defines "transfer" as "for the purpose of giving the person receiving delivery the right to enforce the instrument."

25. Under California Commerical Code §3301, a "person entitled to enforce" an instrument includes a non-holder in possession who has the rights of a holder, or the person who is entitled to possession. A "custodian" is not, and does not have the rights of, a holder; the person entitled to possession is the person on whose behalf the custodian

has possession, the investors in MBS.

26. A "holder in due course" is defined by California Commerical Code §3106. Under California Commerical Code §3106(2)(b), a holder in due course must be one to whom the instrument is "negotiated," and who takes it for value and in good faith. Notes are not "negotiated" - transferred with intent to confer the power to enforce - to custodians, who do not take for value, and who, in good faith, have the instrument only for safe keeping. "Value" and "Consideration" are defined in California Commerical Code §3303.

27. Under California Commerical Code §3306 a non-holder is subject at any time to rescission of delivery, and re-possession by the owner.

28. To demonstrate a right to foreclose, it is not sufficient for the lender merely to have possession of the Note. If the loan has been securitized, the possessor of the Note is presumptively a custodian. If the lender has possession of the Note merely as a custodian for investors, the lender may not foreclose without demonstrating an express agency to do so on behalf of the investors.

29. A Pooling and Servicing Agreement unsigned by investors in MBS is not an express agency because it does not satisfy the Statute of Frauds.

**A POOL TRUST IS NOT AN AGENT FOR INVESTORS**

30. Typically, a Pooling and Service Agreement purports to set up a "common law trust," for which the securitizers appoint a trustee. Loans are sold to the trust, and the debts accumulated in a trust "pool." This appears to follow the classic pattern of a trustor (a purported lender or lenders) who assigns assets to a trustee, to be managed for the benefit of a beneficiary. However, transfer to the trust is intended as a true sale for tax purposes, not a transfer in trust, and there is no beneficiary. The "trust" is simply a

vehicle for "pooling" of the debts, and sale of the assets to others, the investors in the MBS. The investors give value, and receive "certificates," which certify their ownership of the debt. Such certificates may be regarded as replacement of the Notes. This is not a beneficial interest: it is expressly ownership. The trust is emptied of assets, and the trustee thereafter typically performs no functions. The securitizers appoint "servicers" for the loans, but such appointment does not bind the investors.

31. Pooling and Servicing Agreements are entered into by the securitizers, not including the investors in MBS. Certificates are executed by the "trustee" and the original lenders.

32. Transfer of the beneficial interest in a trust deed by operation of confers upon the investors in MBS authority to declare a default and authorize foreclosure. These are not powers which a trustee named in a trust deed can exercise without authorization of the beneficiary. Nor, if challenged, can such authorization be presumed. While it may be generally presumed that a trustee acts at the behest of the beneficiary, it is doubtful, in securitization cases, that the trustee knows who the beneficiaries are, or has obtained instruction from them. Thus, "servicers" are not a "real party in interest" unless they can show their agency to act for the investors.

33. This action, therefore, requires a declaration that the purported lender, its successors and assigns, have no right to foreclose on their own behalf, requires them to demonstrate any right they claim to foreclose as agents of the investors in MBS, and, failing such demonstration, requires investors to come forward to assert their interest, or to have the title quieted against them, leaving only a personal obligation.

**BACKGROUND FACTS**

-7-

COMPLAINT

34. Plaintiff purchased for value and is the owner of the property located at 25204 Via Azul, Laguna Niguel, California 92677 in Orange County (hereinafter "the subject property"), under a grant deed recorded in the Orange County Recorder's Office.

35. On or about August 24, 2006, Plaintiff executed the Promissory Note (hereinafter "the Note") in favor of Mortgage Capital (hereinafter "Lender"). Defendant OneWest purports to now be the successor in interest thereof. On information and belief the original of said Note was then retained by Lender.

36. On or about August 24, 2006, Plaintiff made and delivered the Deed of Trust (hereinafter "the Trust Deed") conveying the subject property in trust for the purposes recited therein to Mortgage Capital Associates Inc. as Trustee. Said Trust Deed was thereafter recorded in the Orange County Recorder's Office. The Trust Deed names as Beneficiary of said Trust Deed MERS acting solely as nominee for Lender and Lender's successors and assigns, and the successors and assigns of MERS.

37. MERS is a private corporation that administers the MERS system, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS system, MERS purports to become the mortgagee of record for participating members through assignment of the members interests to MERS. The lenders initially retain the loan obligations as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors.

38. The first position Trust Deed recites that the beneficiary of this security instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS and

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law

-8-

COMPLAINT

> or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of these interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

39. A Servicer was designated as OneWest for the loan ("Servicer" or "Servicers") to act as their representative/agent for the holders of the respective Note and the corresponding Trust Deed.

40. Upon information and belief, the Lender has been reimbursed all sums advanced by each of them in connection with the Note.

41. The Lender's function was limited to obtaining their respective Note, in exchange for a fee, as a preliminary step to "securitization" of debt as described herein.

42. The debt was pooled with similar debts pursuant to a Pooling and Servicing Agreement between multiple lenders and Servicer in which Servicer purported to act as Trustee of a Trust created hereby, for the purpose of selling such debts as securities to investors, and appointing "servicers" of the pooled loans, and as a custodian of the note evidencing the debt and sold by Lenders and/or a person or persons unknown as securities to numerous investors unknown.

43. The investors and/or the person or persons unknown who sold such securities have obtained insurance against default on the underlying obligations in the form of "credit default swaps" or other credit enhancements. The cost of such credit default swap or other credit enhancement was, as applicable to the subject loan, charged to borrower.

44. Notwithstanding the transfer of the debt as herein described, no transferee thereof has recorded a copy of any security agreement providing any security interest in the Trust Deed or any appropriate affidavits.

COMPLAINT

45. As a result of the transfer of the Note as part of these securities transactions, and of the lack of recordings, Lenders and defendants are not the present owners of the debts under the respective Note or the obligees thereon. Named defendants, or one of them, are a mere custodian of the Note for others. Plaintiff, and, upon information and belief, defendants, do not know who is or are the present owners of the respect debts evidenced by the Note, or the obligees thereon.

46. Named Defendants or one of them is a mere custodian of the Note for others.

47. Plaintiff having a right under the Note and federal law to do so, demanded of Servicers, all information and records showing transfer of such Note to any person or persons, for the purposes, among others, of determining the proper person(s) to receive payments under the Note, or to negotiate payment or reinstatement of the debt.  No qualified response was provided.

48. Through the conduct descried in this Complaint, Defendants have attempted to collect on a debt to which they are not legally entitled as they have no knowledge of proper payments and credits to the debt, and they are not the proper parties entitled to enforce the Note.

49. The obligations of the Plaintiffs are not owed to the Defendants who are claiming interest. There is no perfected interest as to the true Note Holder.

50. Neither the investors in the mortgage back securities nor any other entity or person who had a right to payment from the Plaintiff or who was a lawful beneficiary with a beneficial interest under the Trust Deed ever declared a default under the Note and Trust Deed and no proper beneficiary under the Trust Deed ever declared a default under the Note and Trust Deed and no proper beneficiary under the Trust Deed ever directed or

1  will ever direct a sale of the property owned by Plaintiff in which MERS is named as
2  beneficiary or nominee of the beneficiary/lender at issue in this action.

**FIRST CAUSE OF ACTION: ESTOPPEL/ DECLARATORY JUDGMENT**

51. Plaintiff incorporates herein by reference paragraphs all hereinabove.

52. The Servicers of the respective Note purport in the Trust Deed to have a relationship in the nature of agency with persons to whom the Note and/or Trust Deed may be assigned, and/or persons in fiduciary relationships to such assignees.

53. By permitting the respective Servicers to so represent their respective capacities, the Defendants and any assignees have conferred upon each Servicer the right and obligation to disclose and assert the interests of such assignees as necessary to protect such interests.

54. The refusal of the Servicers, upon demand, to disclose such interests is binding upon their respective assignees.

55. The result of such behavior by Servicers, defendant Beneficiaries, and such assignees, is to subject borrowers and their successors in title, to risks, abuses, and prejudice, and to render impossible proper discharge of the debt.

56. As a result of such behavior, defendant Beneficiaries, and such assignees, including those served by publication herein, are estopped to assert any present default on the debt, or power of sale under the Trust Deed.

57. An actual controversy exists between Plaintiff and defendants regarding the amenability of the subject property to sale by defendants, which may be resolved by the Court pursuant to 28 U.S.C. § 2201, California *Code* Civ. Proc. § 1060 et seq. (declaratory judgment).

-11-
COMPLAINT

58. The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants, lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property.

**SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT**

59. Plaintiff incorporates herein by reference all paragraphs hereinabove.

60. The Bank is not a Trustee of any existing Trust, and Defendants, the Servicers and defendant beneficiaries:

   a. do not know whether a default had occurred, or had been declared by the actual owners of the debts evidenced by the Note;
   b. lack authority to declare a default or otherwise pursue collection of the debts evidenced by the Note;
   c. lack authority to sell the subject property or to distribute any proceeds thereof;
   d. are not entitled to any of such proceeds on their own account;
   e. cannot give trustee's deeds which were free and clear of the debts evidenced by the Note;
   f. cannot give an enforceable release of the Trust Deed.

61. In the event that any investor in the debt evidenced by the Note, or any assignee of an interest in the Note, did not obtain assignment of the Trust Deed, the obligation under the Note, has to that extent, become unsecured, and the Note and Trust Deed, may not be foreclosed.

62. An actual controversy exists between Plaintiff and defendants regarding the amenability of the subject property to sale by defendants, which may be resolved by the Court pursuant to 28 U.S.C. § 2201, California Code Civ. Proc. § 1060 et seq. (declaratory judgment) and Rule 57, F.R.C.P.

-12-

COMPLAINT

63. The Court should appropriately advance this matter on the calendar as provided by Rule 57, F.R.C.P., and promptly enter its Order declaring that defendants lack any interest under the Trust Deed which may be enforced by lien upon or sale of the subject property.

### THIRD CAUSE OF ACTION: QUIET TITLE

64. Plaintiff incorporates herein by reference all paragraphs hereinabove.

65. The transfer of the Note as part of securities, subjects Plaintiff to potential multiple and unpredictable recoveries or attempts to recover, against the subject property.

66. The failure of Beneficiaries and Trustee to retain any interest in the obligations under the Note voided any title or power they might have under the Trust Deed, and rendered the Trust Deed unenforceable by them.

67. The inability of Plaintiff to safely discharge any lien of the Trust Deed against the subject property in favor of assignees of interests in the Note and Trust Deed, and the threat of multiple recoveries or attempts to recover against the subject property constitute a cloud on Plaintiff's title which can only be removed by requiring all such assignees to appear and assert their interests and the extent to which any obligation owing to them has not been discharged by payment, including collections on insurance against default, or, failing such assertion of claims, entry of a decree of quiet title freeing the subject property from the liens of such obligations. The Court, pursuant to California Code Civ. Proc. §760.020 (quiet title), should enter its Order herein forthwith quieting title to the subject property in Plaintiff and against defendants, freeing title to the subject property of the liens of the Trust Deed and leaving any obligations under the Note unsecured by any interest in the subject property.

### FOURTH CAUSE OF ACTION: REFUND, FEES AND COSTS

68. Plaintiff incorporates herein by reference all paragraphs hereinabove.

69. The Trust Deed has been unenforceable by defendant Beneficiaries and Trustee from the first transfer of the Note as set out hereinabove.

70. Defendant Beneficiaries' and Trustee's pretenses of authority to foreclose, or attempt to foreclose, under the Trust Deed were fraudulent.

71. Defendant Beneficiaries' assertions to the Court herein that it holds and is entitled to enforce the obligations of the Note would constitute a fraud upon the Court, subjecting defendants to sanctions and imposition of fees and costs under California Code of Civil Procedure § 1021 et seq.

72. The Court should enter its Order herein forthwith to Defendant Beneficiaries, jointly and severally, to pay to Plaintiff its fees and costs, together with a reasonable attorney's fee, to be shown by affidavit, and to reimburse to Plaintiff unnecessary fees and charges under the Note and the Trust Deed.

WHEREFORE, Plaintiff prays that the Court enter its Order herein:

1. Declaring that Defendant Beneficiaries lack any interest in the subject property which permitted them to foreclose, or attempt to foreclose, the Trust Deed and/or to sell the subject property; and

2. Declaring that the Trust Deed are not liens against the subject property, ordering the immediate release of the Trust Deed of record, and quieting title to the subject property in Plaintiff against defendants and all claiming by, through, or under them;

3. Refunding to Plaintiff from Defendant Beneficiaries, jointly and severally, all fees and charges paid under the Trust Deed, and awarding Plaintiff costs of the action, including a reasonable attorney's fee; and

4. For such other and further relief as the court deems just in the premises.

DATED: October 6, 2010

By: _____
ZACHARAY ROBERTS
Attorney for Plaintiff